STATE OF MAINE                          SUPERIOR COURT
HANCOCK, SS.                            CIVIL ACTION
                                        Docket No. RE-03-7
                                        JLH - HAN - 2/7/2005

David S. Lloyd et al.,
        Plaintiffs


        v.                              Findings and Conclusions


Peter T. Benson, III et al.,
        Defendants


        Hearing on the complaint and counterclaim was held on October 21 and 22, 2004. On both hearing dates, plaintiff David S. Lloyd was present with counsel, and defendants Peter T. Benson, III and Susan Rand appeared with counsel. Plaintiff Vickie R. Lloyd and defendant William Rand were not present but appeared through counsel.

        The central issue in this case is a dispute over the location of a boundary between abutting parcels owned jointly by the plaintiffs (collectively, Lloyd) and defendant Susan Rand. Rand acquired her parcel by gift from her father, defendant Peter T. Benson, III. Lloyd has asserted several tort-based claims against the defendants, all of which are predicated on the argument that he owns the land on which the alleged torts occurred. In a counterclaim, the defendants seek a declaratory judgment regarding the location of the boundary. In assessing the fundamental question presented here, the court is guided by the familiar principle that the location of a boundary on the face of the earth is a question of fact. *Hennessy v. Fairly*, 2002 ME 76, ¶ 21, 796 A.2d. 41, 48. To determine that location from a deed description, the court must determine the intent of the parties to that deed. *Id.* If the facts extrinsic the deed generate a latent ambiguity in the deed description, then a parcel's boundaries are located by reference to monuments, courses, distances and quantity, in that priority. *Id.*

APR 26 2005

1

The parties have properly focused on the factually dispositive question, which is whether the length of the northeast boundary of Lloyd's parcel is 1,070 feet (as the defendants suggest) or 1,270 feet (as Lloyd suggests). Rand's parcel is located northwesterly of Lloyd's, and the northeasterly boundary of her property is an extension of Lloyd's northeasterly line. If, as he argues, Lloyd's boundary is 1,270 feet long, then Rand's house and other improvements encroach on his property, and there was some improper timber cutting on his land.

The deed describes Lloyd's northeast boundary in the following way: ". . .thence North sixty-three degrees and thirty minutes West (N. 63° 30' E.) and always following the Southerly line of land belonging to Peter Benson, twelve hundred seventy feet (1270') to an iron pipe driven in the ground;. . . ." *See* plaintiffs' exhibit 2. A metal pipe is located 1,070 feet from the beginning point of that line, and there is no metal pipe 1,270 feet from that point. This creates a latent ambiguity in the deed, requiring resort to the analytical principles noted above. Ultimately, through both an application of the boundary determination priorities noted above and consideration of the extrinsic evidence as a whole, the court finds that the length of Lloyd's northeasterly line is 1,070 feet and that Rand owns the disputed land.

Lloyd's parcel was created in 1959 from a larger parcel owned by Benson's father. Benson's father determined the boundaries of the outconveyance based on qualitative considerations. He walked the lines with a surveyor, one Raynes, both of whom were assisted by Benson himself. Raynes prepared a plan of the outconveyance. *See* defendant's exhibit 1. The very presence of the iron pipe at its location 1,070 feet from the easterly corner of the lot is, under the priority formulation, entitled to significant probative weight, particularly in comparison with a distance call, which is third on the priority list.

Even beyond this, collateral evidence persuasively supports Benson's contention that the location of the iron pipe in fact is the terminus of Lloyd's northeasterly line, notwithstanding the discrepancy between the distance call in the deed and the length of that line on the face of the earth. On his written plan, Raynes indicated the location of the iron pipe he set, in relation to a fence. The fence is still there. The plan suggests a distance of 145 feet between the two. From that plan, it would be impossible to plot

2

precisely the distance between the pipe and the fence, because the plan does not indicate a bearing of that 145 foot distance, and because the depiction of that distance on the map suggests that the 145 foot distance in fact may not be the shortest span between the fence and the pipe. Nonetheless, by including the fence on his plan and graphically tying it to the pipe, Raynes clearly thought that the fence was a significant landmark. Thus, despite the lack of precision in his reference to the fence, the court treats it as meaningful evidence to locate the northerly corner of Lloyd's property. If that corner is where Lloyd claims it to be, then it is as close as twenty or twenty-five feet to the fence. On the other hand, the pipe in its present location is roughly 145 feet from the fence. Therefore, this evidence substantially supports Benson's claim.

Benson's contention that the boundary line is 1,070 feet long is also supported by his own testimony about his father's creation of the parcel now owned by Lloyd. Although Benson has an obvious interest in the outcome of the case, the court nonetheless finds it credible, and this constitutes the only direct evidence about the circumstances when Lloyd's parcel was created. Benson assisted Raynes when the two of them and Benson's father walked the land to establish the parcel that would be sold to Lloyd's predecessor in interest. Benson confirmed that his father decided that the northern corner of the new lot would be located at the point where Raynes then set the pipe and where it is still located. Benson's knowledge of this location is based on his actual memory of where the pin was set, and it is also grounded on its relationship to other aspects of the boundary lines that his father decided to create.

It is also worthy of note that the appearance of the pipe is consistent with one that Raynes would have used. It bears no markings or other identifying information, which was typical of pipes used by surveyors at the time Benson's father created the lot that Lloyd now owns.

Lloyd presented the expert testimony of a surveyor, Edward Jackson, who has surveyed the Lloyd property and concluded that the boundary line at issue here is 1,270 feet long. The court does not give weight to Jackson's opinion for two principal reasons. First, Jackson has chosen to disregard the significance of the fence in his effort to locate the northern corner of the Lloyd property. He reasons that the fence is not noted in the record description, and he also argues that the northern corner of the parcel is located

3

1,270 feet from the easterly corner, and so the location of the fence is immaterial. Although the first point is correct, the latent ambiguity in the deed requires consideration of extrinsic evidence such as the fence. And Jackson's second point is circular: the reason why the fence should be considered is to determine the location of the northern corner. It is logically fallacious to reject consideration of the fence because one assumes that the answer is already known.

The court is also troubled by the way that Jackson dismissed a document that Raynes used as a draft for the deed description.[1] Jackson felt that Raynes (for whom he had worked beginning in 1967) simply made a mistake when wrote the numerals 1,070 in a document that described the boundaries of the Lloyd parcel. Jackson said that he would place greater weight on the words that quantitatively described the length of that line. In fact, that document includes an expression of that distance both in numerals and in words, and they both indicate a boundary line that is 1,070 feet long. Lloyd's attempts to rehabilitate this element of Jackson's testimony were not persuasive.

Lloyd makes several other arguments in support of his claim that his boundary line is 1,270 feet long. He correctly points out that if the line is the length Benson contends, then the distance of the opposite (southwesterly) line as set out in the deed is also wrong because it would be too long, and in fact the terminus of that boundary would be somewhere in the ocean. This argument is not persuasive, because it appears that Raynes had to compute the southwesterly line rather than measure it directly. The westerly corner of the outconveyance was located in land that was difficult to enter because it was wet. In fact, to mark the point designated by his father, Benson placed a shirt in a tree.[2] When Raynes later calculated the location that corner, he probably also

---

[1] The document itself, defendants' exhibit 2, was not admitted into evidence. However, it was properly used as a basis to test Jackson's opinion because it appeared to Jackson that the Raynes wrote the document.

[2] This element of Benson's testimony adds his overall credibility. Benson stated that the cloth remained in the tree for many years and was visible to any passerby. The verifiable nature of this statement makes it less likely to be false.

Lloyd argues, principally through Jackson's testimony, that it is unlikely that Raynes would have marked boundaries in this way because Raynes was more formal in his surveying practices. However, it appears that the shirt was used only as a temporary mark. a week or so after he accompanied Benson's father (and Benson himself) to the

had to compute the length of the associated boundary line because it was too difficult to get into the wetland. If – as the record suggests – he mistakenly measured the northeasterly line and recorded it as longer than it actually was, that mistake would have affected the computed line on the other side of the new parcel.

Lloyd makes a similar argument with respect to the area of Lloyd's parcel. The deed description and Raynes' plan both indicate that it would be 16.5 acres. If the northeasterly line were 1,070 feet instead of 1,270 feet, then the actual size would be roughly 12.5 acres. However, the area of land stated in a record description is assigned the least significance and thus yields to the more important evidence discussed above. Further, that mistake is understandable because it would be the result of a computation affected by the erroneous reference to a 1,270 boundary line.

Finally, of the significant arguments Lloyd makes, he contends – through Jackson – that, contrary to Benson's testimony, Raynes did not use a 200 foot measuring instrument. Rather, from Jackson's observations of Rayne's surveying methods, Raynes used a 100 foot measure. From this, Lloyd argues that it is not likely that Raynes would make an error of 200 feet. Jackson's observations, however, are based on his affiliation with Raynes that began eight years after Raynes did the surveying work that created Lloyd's parcel. Benson, who has a mathematics background, has a precise memory that Raynes used a 200 foot measure. The court credits this testimony, and this makes it more understandable that the mistaken notation of the boundary line at issue was off by 200 feet – one application of that measure.

For these reasons, the court finds that the record length of Lloyd's northeast boundary is incorrect and that it is in fact 1,070 feet. For this reason, all of Lloyd's claims fail, and the defendants are entitled to declaratory judgment and their costs of court. The defendants shall prepare a proposed judgment setting out the substance of the declaratory relief regarding the location of the boundaries at issue in this case. When it is submitted, counsel shall advise whether plaintiffs' counsel agrees that it reflects the decision embodied in this order.

---

property to allow Benson's father to decide where the boundaries should lie, Raynes returned to the area. The court infers that on the return trip, Raynes did the more scientific work that resulted in the plan.

The entry shall be:

Findings and conclusions issued by the court. Counsel to submit a proposed judgment.

Dated: February 3, 2005

_____
Justice, Maine Superior Court

FILED &
ENTERED

FEB 0 7 2005

SUPERIOR COURT
HANCOCK COUNTY

6